**CITY OF FAIRBANKS**, Plaintiff, v. George **GILBERTSON**, Defendant.

No. 9210.

District Court, Alaska. Fourth Division, Fairbanks.

Jan. 4, 1957.

William V. Boggess, Fairbanks, for plaintiff.

Edgar Paul Boyko, Anchorage, for defendant.

HODGE, District Judge.

Plaintiff in this action seeks to recover of defendant the sum of $5,146.25 for utility services rendered by it to defendant between February 26, 1950 and August 1952, covering premises known as the Pioneer Hotel. Defendant has filed an answer containing two counts of a counterclaim. In the first count he alleges that he was the owner and operator of the premises mentioned and that on or about July 14, 1952, a fire started in said building, which fire was brought under control and confined to a small portion of the building by various fire fighting agencies; that the pumps furnishing water used by said fire fighting agencies were operated on electrical current furnished by plaintiff; that after said fire had been brought under control, plaintiff by its agents or employees "carelessly and negligently caused to be turned off the electric current being supplied to said water pumps", and that by reason of said alleged careless and negligent acts, the fire fighting forces were deprived of water, whereby the fire again went out of control, completely destroying defendant's building and contents to his damage.

In the second count, defendant re-alleges his ownership of said hotel and contents and alleges that he paid and the city accepted payment of taxes levied upon said property; that "as a part of the consideration for the payment of said taxes, plaintiff undertook to furnish adequate fire protection for defendant's said property". Further, that a fire broke out in his premises on said date, that despite their undertaking so to do, "plaintiff failed and neglected to provide adequate fire protection, in that plaintiff caused the electrical current powering pumps which were furnishing water in fighting the said fire to be turned off;" and as a result of "plaintiff's failure to provide adequate fire protection," defendant's building and contents were destroyed, to his damage.

594

Plaintiff has moved to dismiss both counts of the counterclaim on the grounds that neither states a claim upon which relief can be granted against the plaintiff.

This case involves principles of municipal liability or nonliability for torts which are well established, but the application of such principles to the facts here alleged presents a problem new in this jurisdiction.

■■ The maintenance and operation of a municipal fire department is generally conceded to be a governmental function, upon which no municipal liability arises for negligence in connection therewith. This rule is based upon the proposition that a municipality is under no obligation ·to provide a fire department in order to protect the property of its residents, and hence a city is not liable for failure to maintain such department, or because the fire fighting equipment is inadequate, or for failure to provide an adequate water supply to extinguish fires. McQuillin Municipal Corporations, 3rd Ed., Vol. 18, Sections 53.52, 53.53; Annotations, 9 A.L.R. 143, 33 A.L.R. 688.

■■ On the other hand, it is generally held that a municipality functions in a corporate or proprietary capacity in the operation and maintenance of public utilities, that consequently, municipal ownership and maintenance of an electric light and power system carries with it the same duty, responsibility and liability on account of negligence that is imposed upon and attaches to private owners of similar enterprises. McQuillin, supra, Sections 53.100, 53.-101.

In applying these principles to the first count of the counterclaim, defendant presents a plausible argument which may be said to be a borderline case. If it were alleged that the negligence of the plaintiff consisted in cutting off the electric current being supplied to defendant at his premises as a customer of the city utilities system, proximately causing the fire to spread with resulting damage to his property, doubtless a claim of negligence against the city would

be asserted, upon the authority of Alabama Power Co. v. Emens, 228 Ala. 466, 153 So. 729, and Mullen v. Otter Tail Power Co., 130 Minn. 386, 153 N.W. 746, L.R.A.1916D, 447. But here it is not so alleged, but rather that the city carelessly and negligently caused the electric current being supplied to the water pumps used by the fire fighting agencies to be cut off.

Defendant relies principally on the case of Highway Trailer Co. v. Janesville Electric Co., 178 Wis. 340, 190 N.W. 110, 27 A.L.R. 1268, decided by the Supreme Court of Wisconsin in 1922, which decision merits careful consideration. It holds that a city operating a water supply system and furnishing water for private use and for extinguishing fires by the city fire department was not liable to the owner of a building damaged by fire upon the grounds that the city's negligence in cutting off the water supply prevented the fire department from extinguishing the fire, as the city acted in a governmental capacity, and that a private corporation under contract with the city to furnish the water supply to such city is not liable any more than is the city for damages arising from any breach of its contract obligation to furnish sufficient pressure in the water mains for fire protection. Despite this decision the case further holds that there is a distinction between services rendered by the city in extinguishing fires and the operation of a water system to private consumers for compensation, and that for a breach of the obligation which the defendant electric company owed to the plaintiff as well as to all other residents of the city in the immediate performance of its governmental function of fire protection to not interfere with such gratuitous and voluntary assumed function by the city, by any intentional, unwarranted, or negligent interference with or interruption of such service, the defendant may be held liable for tort and for the damages proximately caused thereby. A decision of the trial court in sustaining a demurrer to the complaint was therefore reversed.

However, upon reconsideration of the same case on the merits, upon appeal from a judgment for the plaintiff, the same court held that the alleged negligence of the defendant in failing to provide sufficient electrical power for the fire fighting equipment did not constitute such intentional or tortious interference with the furnishing of adequate pressure for fire protection, and dismissed the complaint. Highway Trailer Co. v. Janesville Electric Co., 187 Wis. 161, 204 N.W. 773. In this case the court reviews at length the decision of the court on demurrer and a previous decision of the same court in the case of Concordia Fire Insurance Company v. Simmons Co., 1o7 Wis. 541, 168 N. W. 199, in which connection the following language of the opinion appears pertinent:

"While dealing with the subject of furnishing power for water supply to a city by an electric company, that decision on the demurrer follows the rule long established in this state. There is no intimation that there is any different rule, whether the supply is furnished by an electric company or by an ordinary waterworks company. The entire scope of the opinion is to the contrary. It proceeds on the theory that, in furnishing electric power to the city for fire protection, the defendant was performing a governmental function, and applies the law governing waterworks companies performing the same duty. * * *

"According to the Concordia Fire Ins. Co. Case, supra, and the decision on the demurrer in this case, if there is an intentional, unnecessary, and negligent interference with the service being rendered by the municipality in extinguishing the fire, such interference is a ground for action, whether such interference is by a waterworks company or an electric power company or some third person, having no connection with either. * * *

"The negligence now relied upon is that the defendant, in the construction and maintenance of its line, and its employees, after the interruption of the current, failed to do certain things they ought to have done. * * * Such omissions to perform duties as these can hardly be said to be intentional and tortious interference with the furnishing or pressure for fire protection, although they may constitute negligence. * * *

"It is claimed that the fact that the plaintiff was a customer of the defendant has some bearing on the question of liability. The duty which the defendant owed to the city of Edgerton, and that which it owed to the plaintiff, were entirely distinct. To the plaintiff, as a user of current for commercial purposes, it of course owed the duty to refrain from any acts of negligence which might be the proximate cause of loss to the other contracting party. To the city it was bound to furnish pressure for fire protection but to that contract the plaintiff was a stranger. If the defendant had so negligently installed or maintained its equipment as to cause the fire in question, or otherwise to inflict damage in its business relation with the plaintiff, there would have been a common-law liability. It is also the duty of the electric power company to use due care to the public generally without regard to contractural relations, and that care should be commensurate to the danger incident to the control of so dangerous an agency. But we do not consider that the question of the defendant's liability or nonliability, for temporary failure to furnish adequate pressure for fire protection to the city, is in any way affected by the fact that the plaintiff was a customer of the defendant." [187 Wis. 161, 204 N.W. 778.]

Hence these decisions are not authoritative to support defendant's claim in this case.

Conversely, it is held that a municipality is not liable for damages caused by fire where the officers of the defendant village shut off the water supply to a neighboring fire department, upon the principle of immunity or exemption from liability and "sound public policy." Miralago Corporation v. Village of Kenilworth, 290 Ill.App. 230, 7 N.E.2d 602, quoting from Roumbos v. City of Chicago, 332 Ill. 70, 163 N.E. 361, 60 A.L.R. 87, and Gebhardt v. Village of La Grange Park, 354 Ill. 234, 188 N.E. 372. See also, Phillips v. Kentucky Utilities Co., 206 Ky. 151, 266 S.W. 1064; Phillips v. City of Elizabethtown, 218 Ky. 428, 291 S.W. 358, in which the Court of Appeals of Kentucky reversed a trial court decision holding a city owning and operating a system of waterworks, and contracting with a private utility company for electric power to operate the pumps of such system, liable for loss of a house by fire due to insufficient water pressure, upon the grounds that in supplying water for fire protection the city was acting in its governmental capacity. These opinions point out the distinction between the governmental function of furnishing water for fire protection and its private contractual duty of furnishing water for domestic purposes. To the same effect, see Nashville Trust Co. v. City of Nashville, 182 Tenn. 545, 188 S.W.2d 342.

In fact, it is generally held, although there are decisions to the contrary, that a water company or a municipality furnishing water for fires is not liable to the owner of property for its destruction or damage by fire on account of failure to furnish a sufficient water supply, or for alleged negligence in not furnishing sufficient water or water pressure. Annotations, 62 A.L.R. 1221, 81 A.L.R. 1300, 163 A.L.R. 359 (citing the Janesville Electric Co. case); McQuillin, Municipal Corporations, supra, Sec. 53.-105.

In the same manner, I find that the furnishing of electric power to the pumps of the fire fighting equipment, as alleged in this counterclaim, is a governmental and not a proprietary function, for the negligent omission of which the city is not liable in damages. Conceding that motions to dismiss should not be granted unless it appears to a certainty that the claimant is entitled to no relief under any state of facts which could be proven in support of this claim, count I of the counterclaim fails to state any such legal claim.

Applying these principles to the second count of the counterclaim, I am unable to find any authority or precedent in support thereof. In fact defendant concedes that there is almost uniform agreement in the decided cases that a municipality is not liable for injuries inflicted to personal property in the course of the lawful exercise of its governmental function of fire protection, but claims that such does not extend to the negligent interference with the fire fighting function by a non-governmental enterprise of the municipality. This phase of the claim is fully covered as to count I.

Defendant also contends that modern decisions and writers show an increasing critical attitude toward the inflexible application of government immunity in case of municipalities, and cities as "notable" for such departure the case of Workman v. New York City, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314. This was a libel suit in admiralty for damages caused by a fire boat in negligently running into a vessel owned by libelant while called to extinguish a fire. The trial court held the city liable under the "local law", D.C., 63 F. 298. The Circuit Court of Appeals, 2 Cir., 67 F. 347 reversed, upon the principle of immunity of municipal corporations for negligent actions of its officers and employees while performing governmental functions. The Supreme Court in a decision rendered in 1900 reversed the Circuit Court and found the city liable under the general maritime law and the rule of respondeat su-

perior, holding that the public nature of the service upon which a vessel is engaged at the time of commission of a maritime tort furnished no immunity from liability in a court of admiralty, and that the maritime law controlled. It will be readily seen that this decision is not applicable here. I am not able to find where later decisions have construed the rule otherwise. In fact, such principle has been extended in Alaska to acts done by police officers in the performance of their duties. Wilson v. Eberle, 15 Alaska 260.

Defendant also argues that although the "gravamen" of the second count is negligence in cutting off the electrical current powering the pumps, the alleged failure to furnish such fire protection is a violation of a contractual duty owing to defendant by reason of payment of taxes by him. I find no merit in this contention. Annotation, 62 A.L.R. 1208.

By reason of the above it is not necessary to pass upon the question of the statute of limitations also raised by the plaintiff.

The motion to dismiss both counts of the counterclaim is granted, and an order may be presented accordingly.